Good morning, your honors. May it please the court, my name is Stacy Lau and I represent the California Department of Transportation. And by this appeal, the California Department of Transportation, or Caltrans, seeks reversal of the District Court's decision setting aside Caltrans' revised environmental assessment and finding of no significant impact under NEPA, and in joining Caltrans' one-mile highway realignment project. The District Court's orders were contrary to established law in several respects. First, the District Court did not adhere to the arbitrary and capricious standard of review under the Administrative Procedure Act, which requires deference to well-informed agency decisions. In fact, in its order on the remedy, the District Court cited to the wrong standard of review, the reasonableness standard set forth in a 1982 outdated case. Under the correct standard, the agency decision must be upheld if the agency considered the evidence before it and rationally connected it to its ultimate finding of no significant impacts, even if there is contrary evidence in the record. And it's the plaintiff's burden to produce evidence of crucial factors which the agency failed to consider. The plaintiffs did not meet their burden here. Here, Caltrans took a hard look at the potential impacts of its one-mile highway realignment project. It relied on expert opinions, scientific literature, site visits to Richardson Grove, and multiple studies and memoranda in the administrative record. And the court erred by reweighing and reinterpreting the evidence that Caltrans already considered. Secondly, and this is a jurisdictional issue, the court erred by relying on arguments that were never brought up during the administrative process. So which issues do you think were not sufficiently exhausted? The District Court judge ended up saying there were four issues that he thought required an EIS at this point. So was the issue of increased collisions by the STAA trucks sufficiently exhausted? No, Your Honor. The District Court's opinion in that respect turned on its theory that the more protruding nose of an STAA truck would cause more harm than the purportedly blunter nose of an equally heavy California legal truck. And that is a completely new theory that was raised for the first time. So you're saying that specific thing about the caps, because I have at SCR 206, two comments regarding collisions. So it wasn't, collisions were brought up in the record. Now you're saying, yes, that we didn't talk about the length of the caps. Yes, the theory about the protruding nose of the caps was not brought up or exhausted. The idea of the collisions was brought up and that was exhausted. It was brought up, but not specifically within the way that the District Court brought it up. Okay, what about the question with the STAA trucks colliding with trees causing more damage than the California legal trucks, the extent of the damage? No, that was not sufficiently brought up or exhausted in the record, Your Honor. Comments in the record need to be specific. That's set forth in 40 CFR section 1503.3. There were no specific comments establishing why collisions might be more severe due to STAA trucks than California legal trucks, which are again, equally heavy. And Caltrans already considered the issue of safety and collisions. On the next issue, I have two questions. One is, are STAA trucks currently traveling on that one mile length of freeway in the Richards Grove? Yes, Your Honor. There are currently legislative exemptions for certain STAA trucks, livestock carriers, and household moving goods, Your Honor.  Well, the record recognizes that there are already these trucks on the roadway, and that contributed to the fact that the noise would not substantially increase as a result of the project. The other issue that the District Court did not improperly relied on, because it was not exhausted, was the idea that paving over 50% of trees' structural root zones would cause damage to the trees' health. That was never brought up in the administrative record or exhausted. And then the third error that the District Court made was, it's related to the issue of administrative exhaustion, and... Was that what you just said? Wasn't that the wrap-up in the State Parks Handbook? No, Your Honor. The State Parks Handbook has a single sentence which generally says that there should be no construction in the structural root zone of an old-growth redwood tree. And it was error for the District Court to rely on that sentence, because both the plaintiffs and the District Court recognize that it's not binding on Caltrans. So, again, the third error that the District Court made... Excuse me for a second. I don't see Judge Fernandez. Is he... Yes, I dropped off as well for about three minutes, and he just must have been disconnected at the same time here. So should we just wait a minute to get him back connected? Hi, Judges. This is Sam, the tech. I'm hearing that there was a internet problem at the Pasadena Courthouse. That's why we lost both judges at the same time. It looks like Judge Collins is coming in and out. So I'm going to give Judge Fernandez a call and see if we can get him back in on a different device, but it looks like the entire building just lost internet. The entire Pasadena Courthouse lost internet? That's what I was told, yes. I was able to get back in on my iPad, which has a subtle connection, so if you can hear me, then I'm okay. Okay, that's great. Mr. Graz, I'll just give you a warning. I'm very interested in this question of exhaustion, what was exhausted and what was not, because I have to tell you, it was exhausting going through this administrative record. It's a mess. I agree with Judge Helsup on that, and so I think I found places where I think the comments were brought up in the record, and I just really want to end this argument being really clear, like what was exhausted and what wasn't exhausted. Yes, Your Honor. So an issue that was not exhausted is the district first issue, which is that paving over more than 50% of a tree's structural root zone would cause damage to the tree by suffocating it. That was never raised by anybody. Did the Sturgeon study reference that? Did it play into that question? No, Your Honor. First of all, the Sturgeon study doesn't exhaust the issue. It's not a comment on the Richardson Grove project, but second of all, Professor Sturgeon actually states, and this is cited in Caltrans's tree report, that asphalt or concrete paving has not generally affected the vigor of old-growth redwood trees, and Caltrans specifically examined the three trees that the district court thought were at issue and analyzed construction and the amount of pavement that would be added to the root zones and found that there would be no short-term visible reduction in foliage density and that it's still within the adaptive capabilities of the tree. And this was the decision of Caltrans's expert, who has more than three decades of experience. Which expert is that? Who are you referring to? Dennis Henigas, who authored the 2015 tree report, Your Honor. And it was error for the court to set aside this expert opinion and reinterpret the literature in the manner that it did. The district court relied on a single sentence in that study, which said, judging from the absence of significant loss of vigor in trees bordering the highways, coast redwood is evidently not seriously affected by paving where it does not cover more than half the tree's root zone. And the district court judge took that sentence and then made the opposite inference that, therefore, paving over more than 50% of a tree's root zone would necessarily cause adverse effects to the tree. And there is nothing in the record which states that. There is no study, no expert comment, or anything that states that paving over 50% of a tree's structural root zone would suffocate trees. So it was absolutely error for the district court to reinterpret the evidence and reweigh it and set aside the assessment of an expert arborist with more than three decades of experience. Let me ask you, did Caltrans adequately consider the baseline conditions of the redwoods in this case? Yes, Your Honor. There is an entire section in Caltrans' tree report. Can you cite me to that? Yes, Your Honor. It would be in volume eight of the record. And of the excerpts of record, pages 1650 to 1651, entitled Condition of Old-Growth Redwoods in the Project Area. Is that the 2013-2015? Which report is it? I'm citing to the 2015 tree report, which is just a very slight update to the 2015 tree report. And the Caltrans' expert arborist visited Richardson Grove multiple times. He viewed the canopy of all of the trees in the project area. And he found that they all remain very healthy, despite the fact that when this roadway was built more than 100 years ago, buttress roots were severed from these trees and heavy machinery was used. The trees over 100 years remain healthy today. And this project will cause much less impact than the impact of the road it will lay less than a quarter acre of pavement along the existing roadway. Where feasible, Caltrans is going to use handheld pneumatic excavators to blow dirt away from tree roots, rather than heavy machinery that would sever them. So Caltrans has really taken a lot of care in protecting old-growth redwood trees through its design of this project. All right. So just going on to the second issue that the district court relied upon was the single sentence in the state parks handbook, which all the parties and the district court concede is not binding on Caltrans because it's another agency's manual, which states that there should be no construction in the structural root zone of a protected tree. Since it's not binding, it was error for the district court to say that Caltrans should have more comprehensively refuted the single sentence. The law is well-established in this court that agencies are not required to rebut every single bit of evidence or contrary sentences or comments in the administrative record. The indefensive animals case, for instance, this court stated that agencies are not required to So it was error for the district court to say, well, Caltrans should have provided a more comprehensive rebuttal to the single sentence, the single non-binding sentence than it already did. Did Caltrans coordinate with the California State Parks Administration in developing this project and evaluating its impacts? Yes, your honor. Absolutely. Caltrans considered state parks' views on the project, worked with state parks. The record is replete with evidence on this, and it considered the state parks handbook, but it's not required to follow every single sentence stated in the administrative record to the letter. If it has a well-informed decision, a well-informed reason why construction in structural root zones would not be significant, then under the APA and the arbitrary and capricious standard, deference is due to Caltrans' well-informed decision. Caltrans here studied the impacts of construction in structural root zones of old-growth redwood trees. There's a plethora of scientific literature in the administrative record that Caltrans reviewed about old-growth redwoods and tree roots. There were multiple site visits with engineers and Caltrans' expert arborists to look at the proposed construction, look at mapping, and determine what the effects on these trees would be. And this resulted in 109 diagrams of each and every old-growth redwood tree in the project area depicting the amount of cut and fill and pavement in each tree's structural root zone and analyzing the construction work and providing an expert assessment. And it was error for the district court to set this all aside based on a single sentence in another agency non-binding handbook. The third issue that the district court relied on was the issue of visitor enjoyment of Richardson Grove as an umbrella for re-examining Caltrans' analysis of traffic and noise impacts. And here, the district court went well beyond its role under the arbitrary and capricious standard of review. Some preliminary points I want to make are that this was not an issue that the plaintiffs raised in their summary judgment motion, but one that the district court raised on its own. And also, the California Department of Transportation is an expert in highway traffic and noise. And under the APA, courts should be particularly deferential to an agency's judgments in the areas of its expertise. And here, Caltrans took a hard look at traffic and noise impacts. For example, a senior transportation planner evaluated the project impacts and found there would not be a substantial shift in traffic from I-5 to Highway 101 because I-5 has a straighter and faster alignment. The chief of traffic operations for District 1 looked at non-STA age truck traffic that shifts from I-5 to Highway 101 when there are snow closures of I-5. And even when I-5 is closed, there was less than a 1% difference in traffic on 101. A PhD economist looked at the economic evidence of potential growth resulting from this project and the traffic evidence. And in particular, he relied on survey estimates from local businesses from a survey conducted by Humboldt County, which indicated that this project would result in a decrease in truck traffic. Now, the plaintiffs in the district court criticized Caltrans for relying on survey estimates. But this court has been clear that it is perfectly appropriate for agencies to rely on survey estimates and the available evidence. The court established this in the agency relied on a single survey response in a given year for OWL surveys. And the court found that this was not arbitrary and capricious. Council, let me ask you, assume this project were to go forward, would there be conditions under which Caltrans would have to stop the project and get additional data or supplement the record at some point? Well, if significant new information is discovered or substantial project changes are made, then Caltrans would go back and re-evaluate that information and do another environmental analysis, your honor. Yes, some of the documents in there and some of the evaluations of the trees are, they're old and conditions have changed. Caltrans has been at work on this for over a decade. Is that right? Yes, your honor. But the most recent tree report was from 2015. And during that time, Caltrans' expert arborists again looked at these trees and viewed their canopies from above. There was a helicopter overflight, for example, and saw that all of these trees remained very healthy and vigorous. And this was his expert opinion. So then just unlike in the Ocean Advocates case or the National Parks Association cases where this court did set aside agency decision-making, there's no body of evidence here that Caltrans should have considered but did not. There's no evidence that a different or better prediction could have been made. There's just speculation about potential effects and that's not enough to overturn an agency's decision. And then, so the fourth issue that the district court raised was tree strikes due to the more protruding nose of STAA vehicles, which as I mentioned before, was not administratively exhausted. Now, the plaintiffs try to turn this into an argument about overall safety of STAA trucks striking trees, but they don't meet their burden to point to any evidence that is contrary to Caltrans' decision here. Again, Caltrans is an expert in highway design and traffic safety. And Caltrans engineers, the record reflects that engineers designed the geometrics of the proposed roadway to accommodate STAA trucks and use computer modeling software called Auto-Turn to check the project design and found, based on conservative estimates, that the proposed alignment could safely accommodate these trucks. So the district court had no reason to set aside Caltrans' informed agency decision. Its decision should be reversed, your honors, and the injunction against this project lifted. Council, I have one last question because this sounds counterintuitive to me, but you, your, Caltrans says the reason they're, they wanted enlarge the highway in the Richardson Grove is so that the STAA trucks can use, can use that stretch of freeway more than they're using it now. Mm-hmm. Isn't that inconsistent with your position that there's not going to be an increase in traffic? No, your honor. The project is to increase the STAA traffic? No, your honor. The project is not to increase, increase the amount of traffic. The record shows that currently businesses in Humboldt County are, are using California legal trucks on Highway 101 to transfer cargo. And, and what, what's happening is that STAA trucks are approaching Richardson Grove. The cargo then has to be unloaded from these STAA trucks to California legal trucks to then go through the Grove. So these California legal trucks would be replaced by STAA trucks. I thought the finding was that they were taking Interstate 5 rather than using 101. No, that's not the finding. The finding of the traffic engineer was that trucks bypassing Eureka would not then shift over to 101 because I-5 is straighter and faster, your honor. Thank you. I'd like to reserve my remaining few seconds for rebuttal. Okay. Thank you. Thank you. Thank you. Thank you. Dan? Yes. What is that noise? Can you hear me now? Yes. Okay. Yeah. I'm sorry about that. As they were switching me over back to the normal feed, there was some feedback while the two, two feeds were going at the same time. Sorry about that. Is everything okay there now? Are your, the internet's back up? I think we're in business again. Okay. Mr. Gross, you may proceed. Thank you very much. Good morning, your honors. If you may please the court, my name is Stuart Gross, Gross and Klein. I represent the plaintiffs. The proposed road project here is in the middle of ancient redwoods, some of which, or many of which, are thousands of years old and extend up to 300 feet high. It is also in the middle of one of California's oldest state parks, one that in fact was created through the donation in 1920 of land by the grandfather, great-grandfather of one of the plaintiffs. Over the course of 12 years and three different EAs, Caltrans has never adequately assessed the potential impacts of the project on these trees or the park, or importantly, provided a convincing set of reasons why those impacts would not be significant. Now Caltrans, in their briefings, speaks a lot about the burden that plaintiffs supposedly have. Let's be clear, the burden that the plaintiffs have here is only to raise substantial questions. We have to indicate, we have to show evidence of substantial questions, and then Caltrans has to show that they took a hard look at those issues and provide a convincing set of reasons why those impacts would not be significant. Now the district court had identified four bases, four aspects of the problem that Caltrans failed to take a hard look at. This court only need to agree as to one of those to affirm the district court's order. First, the impact of cutting and filling in the structural root zones of old growth trees, and quite literally, whether that work would result in the toppling over of these trees. Now Caltrans says, well we looked at those issues, they didn't. There's no quantification of any kind of cut and fill work done in those trees. What there is, is there's a statement in response to a State Parks comment. State Parks says, you need to look at these issues. We believe that there is significant and potentially unavoidable adverse effects. Caltrans states in response to the comments, we don't need to look at that issue because we're going to be using mitigation measures that will prevent the cutting of structural roots, except in several different areas. Now what there isn't then, is any kind of analysis for each tree that has those mitigation measures to be done in their root zone, or very importantly, any analysis of what is the impact for the trees where the mitigation measures would not be used. And when we talk about not using mitigation measures, what we're talking about is using mechanical excavators for cut slopes, for culvert work, and for various other activities below those millennial trees. And there's no analysis. Nowhere does it say, this is what will be done where in the structural root zones of those trees. And there's nothing that then says, and this will be the impact on those trees. So State Parks raises a question, as did many other commenters, and then there's no convincing set of reasons why that impact would not be significant. That is when NEIS is required. Next issue on which the district court correctly found that there was a failure to take a hard look, was the health root zone impacts. So Caltrans tries to narrow this issue into this question of a threshold of significance. Is it 50%, as Dr. Sturgeon indicates, or is it 30% that in fact, State Parks indicated? The point is though, not whether Caltrans used the correct significance threshold. The question is, did Caltrans not look at this issue of total coverage of health root zones? And it didn't. There is nothing in the revised EA that says in this health root zone of any particular tree, this will be the total amount of that health root zone that is covered by pavement. And there is absolutely nothing following that that says, and here is why that will not judge Wardle about baselines. What Caltrans did instead was actually use a baseline assumption as an excuse not to do the analysis. Caltrans said, in response to State Parks saying specifically, if you go over 30% total coverage of a health root zone, again, we believe that there will be significant and potentially adverse, unavoidable adverse effects. Caltrans' response is, well, these trees have shown that they have acclimated over the last 90 years. That doesn't answer the question. So they've acclimated to what the current surface is, maybe, according to Caltrans, but they have, it says nothing about whether if you add more to that coverage, it's going to cause a problem. And State Parks raises that substantial question. It's left unanswered. That is precisely when an EIS is required. Now, also, Ms. Lyle mentioned the assessment that was done to determine the baseline condition. Caltrans, State Parks stated specifically in its comments that assessing the baseline condition of these trees simply by looking at their canopy is not sufficient. You can't do that. The science does not back that up. But that is entirely what Caltrans relied on, not only to assess that baseline condition, but in fact, to avoid actually taking a hard look. Let's move next to the third ground on which the District Coorder found that Caltrans failed to take the required hard look. Traffic noise, long-term traffic noise. There is nothing in the administrative record that addresses long-term traffic noise. The only noise study that exists in there is one about construction noise. Never once is there any analysis of traffic noise. That is the opposite of a hard look. An agency acts in a manner that's arbitrary and capricious when it entirely fails to determine an important or consider an important aspect of a problem. Not looking at all at long-term traffic noise is precisely that failure of consideration. To the point of, well... Mr. Grossman, was that particular issue exhausted? Was that raised anywhere in the record? If so, can you tell me where? Yes. So, Your Honor, there was, and I don't have it precisely at my fingertips, but there was a number of comments that, and I'd be happy after this argument's over to provide you citations. As you indicated, it is an enormous and confused record. Only portions of it were submitted as an excerpt. I will provide the citations. But to answer your question, many people raised the issue of what would be the oldest state parks on the experience of visitors. That was raised over and over. And let's maybe back up slightly to this question of administrative exhaustion. Administrative exhaustion, the requirement set out originally in Vermont Yankee, talked further about National Parks and Conservation Association, the Bureau of Land Management, 606 F3D1058. That is not a narrow and specific requirement. It's a rule of basic fairness. And there has to be a basic raising of the issue that places the agency on notice that this is an issue it needs to examine. And there were numerous people who came forward and said, including state parks, but many, many others, and said, we are very concerned about how this project is going to ultimately impact the experience of visitors. In those comments, and I will find them for your honor, I am pretty sure there are ones that specifically say, and we're also concerned specifically about the long-term noise. But that's not necessary for administrative exhaustion. As soon as the broader category of park visitor experience was placed in front of Caltrans, it was required to look at that. At the very least, when people raise the issue of long-term traffic impacts. And let's talk about the study that they did. All right. So this was a study back in, I believe it was 2008. And that traffic study, the only one that it is, it's an economic impact study. The traffic element is based on the lay person estimations of 18 of 45 people who responded to this 12, 13 years ago. Now, Caltrans is absolutely correct that when you're talking about an area that is within their expertise and traffic is, there's deference. Now, a distinction is it is absolutely outside their expertise about the project's impact on old growth redwoods. But let's talk about traffic. Simply because it is within their expertise does not mean that they're entitled to not take a hard look at an issue. And one could argue that Caltrans itself is particularly well situated to know that the Gallo report, that economic impact study, is not a true traffic study. Caltrans also points to some work by some of its engineers about diversions from 101. That's not even about this project. That is about a project in Del Norte County on highways 197, 199, looking at the narrow question about whether it grants pass. If they close grants pass, traffic will be diverted down there. It is not a study about whether or not in this circumstance, you're going to have more traffic in this grove. That then gets to another issue that we have here, which is impacts, the impacts that the district court identified that were unlooked at about additional collisions between trucks and trees. Caltrans, again, never actually takes a hard look at it. They state when the issue is more accidents. Caltrans' entirety of its analysis is to say, we're correcting certain corners, thus it's logical to conclude that it'll be better. Now, Caltrans says that it was plaintiff's burden to put in some kind of expert evidence showing that's not correct. That's not the case. The issue was raised by state parks about additional accidents. As plaintiff's site in their brief, there are a number of pieces of evidence in the record that raise real questions about whether when you open up this area to unrestricted SDA traffic. So SDA traffic now escorted by CHP, going to open it up completely. But Caltrans, when they're opening up completely, they're taking a number of design exemptions. So it's not that they are making this road a traditional STAA compliant road. There are numerous design exemptions, which are required for them to in this area or collisions between trees and vehicles. And this project is going to move the road closer to many of those trees. So this raises substantial questions. It's not our burden as the plaintiffs, as the public to come in and do the work for Caltrans. What we need to do and what was done is bring it to their attention. Now, and we did. We did, state parks did, numerous people did. And Caltrans, instead of actually taking a hard look and laying out evidence and showing the logical path by which it reached its conclusion, simply jumps to the conclusion. And that's the opposite of taking a hard look and is not what the law allows Caltrans to do. Another issue that Caltrans raises here is a kind of broader argument that we don't need to worry about the impact on each tree, that rather we can look at this in the aggregate. And Caltrans in its brief talks about, well, there's 40,000 old growth or 40,000 redwoods, and there's only a quarter acre of new pavement. The problem here for them is, and the importance here, is that each one of these trees that again are millennia old and are some of the tallest things in the world, each one of these trees is an important historical and cultural resource. So you can't look at this project in the aggregate. You have to actually determine what's going to be the impact on each one of these trees, and are they going to be placed at risk? Now, it's not the question, and maybe to finish that point, the law that Caltrans cites in support of the proposition that it is okay for them to look at this in the aggregate, that law is looking at an entirely different CEQ, Council for Environmental Quality, factor. That's looking at the factor of whether a project is going to impact or would impact, potentially impact I should say, a protected species, a threatened or endangered species. And so those cases say, when you're looking at that factor, you look at the species as a whole, which makes perfect sense, given the underlying purpose of the Endangered Species Act, to prevent jeopardy of the species. In this instance, when we're talking about some of the few remaining tallest things living on earth, you can't look at it as, well, I think basically they're all going to be fine. You have to dive down into it and take that look. What's the status of the other claims? I mean, because you even had, I think in your complaint, different counts on the 4F and the WSRA. Were those dismissed before judgment was entered? Is it a 54B judgment? What is the status of those as we sit here? Right. The status as we sit here, your honor, is they're not ruled on. So those claims- Are they still pending in the district court? I'm sorry, say again, your honor. Are they still pending in the district court? That is an interesting question, your honor. Procedurally, they are, the short answer is no, they're not pending before the district court. So were they dismissed as part of the final judgment? I'm puzzled. They were not addressed in the final judgment, your honor. I understand the procedural- But how can that be? You can't have a final judgment unless all the claims between the parties have been disposed of, right? Yep. And I think what, your honor, to sort of take a step back here, when the district court entered the decision in joining the project and requiring that Caltrans prepare an environmental impact statement, that effectively disposed of the other Caltrans. When the court required, the district court required Caltrans to prepare an EIS, it then had the effect of invalidating its programmatic 4F analysis. You cannot do a programmatic 4F analysis. You have to do an individual 4F analysis if a project requires an EIS. Also, the other NEPA claims that we raised, plaintiffs raised, those also then were disposed of effectively with the order for an EIS. The Wild and Scenic Rivers Act claim, that claim, whether or not a new, we would argue, and if we get to that point, we will if need be, that when Caltrans prepares a new EIS, it will be required to provide the National Park Service an updated consultation because it will have updated information. And so I think effectively the requirement that an EIS be done effectively resolves all of those other claims because of what is required. So that I, so I can understand it, is it when you use the words effectively resolves, those claims, because you prevailed in getting the judge to order the EIS be produced, those claims are no longer viable because with that bet, if we were to reverse the district court on that, are those claims suddenly viable again? Yes, Your Honor. Okay. Procedurally, I'm still not sure though how they get resurrected. And I understand that, Your Honor. I'll be honest. I haven't looked at that procedural question. So I unfortunately can't shed a lot of light on that. Your Honor, the district court getting down in the weeds issued a well-reasoned opinion in validating the EIA and ordering an EIS. We submit the district court's order should be affirmed on both bases. Thank you very much. Thank you, counsel. I'll give you a minute or so to respond. Thank you, Your Honor. So the plaintiffs completely ignore the vast majority of Caltrans' tree analysis in the record. They say that we didn't conduct an individual evaluation of each of the trees. There are 109 diagrams showing the construction in the trees' root zones and providing an expert analysis as to each tree. The plaintiffs don't respond to that. The plaintiffs raised the issue of comments from state parks. Well, this court made clear in the Akiak Native Community case that agencies are required to consider other agencies' comments and analyze them as Caltrans did here. But it's not bound by another agency's disagreement with the way that it conducted its analysis. Caltrans provided a point-by-point 14-page response to state parks' comment letter and invited state parks to continue the dialogue. State parks did not bring up any more issues. And in the end, it filed a declaration stating that it agreed with Caltrans' assessment of effects on Richardson Grove. And then finally, the plaintiffs completely ignore the law here when they bring up speculation from comments in the record about potential impacts that might occur. And this court, in a very long line of cases from Greenpeace Action v. Franklin to Center for Biological Diversity v. Elano, says that even if there is conflicting evidence or differing opinions in the record, deference is due to the agency who studied the impacts of the project and came to a well-informed decision. The plaintiffs argue that Caltrans didn't do any study of noise. That's not true. Its noise technicians looked at the fact that the highway would not be moving substantially east or west. There would not be any increase in capacity because there won't be an increase in the number of lanes. And it measured the current noise in the park, which actually is already quite noisy. And it found that there would not be a substantial increase in noise. And this was the judgment of Caltrans' noise technicians. The judgment of Caltrans' engineers is also through the review of the software and the design of the highway. There would not be a greater amount of truck collisions due to this project. Actually, this project would reduce collisions. It would be safer because it would provide more room for truck turning movements. And that's in the record as well. So Caltrans had ample evidence to support its well-informed decision that this project will not cause a significant impact on the environment. And the district court went well beyond its authority under the APA in reinterpreting the literature, weighing the speculative comments in the record against Caltrans' agency decision, and setting aside an agency decision that's supported by multiple studies and expert opinions and memoranda in the record. So Caltrans respectfully requests that it be reversed. Thank you, counsel. Behr v. Caltrans is submitted and this session of the court is adjourned for today. Thank you both. Thank you. This court for this session stands adjourned.
judges: Fernandez, Wardlaw, Collins